# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOSEPH HALL, SR., | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-19-2510 |
| JPMORGAN CHASE BANK, N.A., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM**

This dispute arises out of a loan agreement between *pro se* Plaintiff Joseph Hall and Defendant J.P. Morgan Chase Bank. Plaintiff brings a variety of claims under state and federal law challenging the validity of the agreement and its terms. Now pending before the Court is Plaintiff's Motion to Remand (ECF No. 16), Plaintiff's Motion to Strike (ECF No. 23), Defendant's Motion to Dismiss (ECF No. 14), Plaintiff's Motions for Admissions and Production of Documents (ECF Nos. 26, 27, 33), Defendant's Motion to Stay Discovery (ECF No. 29), Plaintiff's Motion for Summary Judgment (ECF No. 31), and Plaintiff's Motion to Compel Discovery (ECF No. 32). No hearing is required. *See* Local Rule 105.6 (D. Md. 2018).

For the reasons set forth below, the Court will deny Plaintiff's motion to remand, deny Plaintiff's motion to strike, grant Defendant's motion to dismiss, deny Plaintiff's discovery requests, deny Defendant's motion to stay, and deny Plaintiff's motion for summary judgment.

## I.    *Factual Background*

On November 30, 2007, Plaintiff borrowed $114,695 from Freedom Mortgage Corporation and secured the loan with a deed of trust. (Deed of Trust, Compl. Ex. B at 20, ECF No. 1-2.) The

deed of trust encumbered a property at 1144 N. Stricker Street, Baltimore, Maryland 21217. (*Id.* at 29.) The beneficiary of the deed of trust was Mortgage Electronic Registration Systems, Inc. ("MERS"). (*Id.* at 20.) On July 6, 2012, MERS assigned the deed of trust to Defendant. (Assignment of Deed of Trust at 54, Compl. Ex. F, ECF No. 1-2.)

On April 2, 2015, Plaintiff filed suit against Defendant in Circuit Court in Baltimore City, Maryland, seeking to quiet title to the property. (2015 Circuit Court Docket, Case No. 24-C-15-001642, Mot. Dismiss Ex. A, ECF No. 14-2). The suit in large part contended that the loan agreement was unenforceable because MERS had fraudulently assigned the deed of trust to Defendant. (2015 Compl., Mot. Dismiss Ex. B, ECF No. 14-3.) During the course of the lawsuit, the parties attended a court-ordered mediation session with mediator Ira Himmel. (Mediation Documents, Compl. Ex. G at 58–60, ECF No. 1-2.) During the mediation session, a handwritten document was produced that appeared to describe the terms of a possible loan modification. (*Id.*) The document was not signed by either of the parties. (*Id.*) Defendant contends the author of the document was Mediator Himmel. (Mot. Dismiss at 2, ECF No. 14.) At one point, Plaintiff agrees that Mediator Himmel was the author (Opp'n Mot. Dismiss at 13, ECF No. 17), and at another point, contends that Defendant's counsel was the author (Mot. Remand at 7, ECF No. 16).

On the day following the mediation, Defendant filed a motion for summary judgment. (2015 Circuit Court Docket at 5.) The Circuit Court granted Defendant's motion in full and entered judgment for Defendant. (Circuit Court 2016 Mem. Op., Mot. Dismiss Ex. D, ECF No. 14-5.) Plaintiff then filed a motion for reconsideration, which the Circuit Court denied. (2016 Mot. Reconsid. Denial, Mot. Dismiss Ex. F, ECF No. 14-7.) Plaintiff appealed and the Court of Special Appeals affirmed. (Court of Spec. Appeals 2017 Mem. Op., Mot. Dismiss Ex. G, ECF No. 14-8.)

One year later, in the summer of 2018, the parties signed a loan modification agreement, which added $56,826.43 to Plaintiff's principal balance. (2018 Loan Modification, Mot. Dismiss Ex. H, ECF No. 14-9.) The signatures of Plaintiff and a representative of Defendant are on the agreement. (*Id.* at 9–11.) The agreement stated that it would "supersede the terms of any" other modification to which the parties had previously agreed. (*Id.* ¶ 4C.)

On July 26, 2019, Plaintiff filed the instant suit in Circuit Court of Baltimore City. (Compl., ECF No. 1-2.) Defendant subsequently removed the action to federal court and the matter was assigned to the undersigned. (Not. Removal, ECF No. 1.) Plaintiff's primary contention in this suit is that the parties reached a binding settlement agreement during the 2016 mediation session, which Defendant refuses to honor. (Compl. at 1–3.)[1] Specifically, he brings the following claims: quiet title (Count I), breach of contract (Count II), bad faith breach of contract (Count III), and violations of the Fair Credit Reporting Act ("FCRA") (Count IV). (*Id.*)

## II. *Motion to Remand and Motion to Strike*

The first issue before the Court is whether this is the proper forum to hear this case. Plaintiff contends it is not the proper forum and he has filed a motion to remand and a related motion to strike.

Defendant removed this action to federal court on the basis of diversity. (Not. Removal at ¶¶ 7–12.) Defendant contends the requirements of 28 U.S.C. § 1332 are met because there is complete diversity between the parties (Plaintiff is a resident of Maryland and Defendant is a resident of Ohio) and the amount in controversy exceeds $75,000 (the dispute involves a claim for at least $1,000,000 in damages and a property secured by a loan of $114,695). (*Id.*) Plaintiff does not dispute these jurisdictional facts, and the Court concludes the § 1332 requirements are satisfied.

---

[1] Because the complaint contained repeat paragraph numbers, the Court will reference its contents using page numbers.

Plaintiff does, however, contend that removal was improper for numerous other reasons: (1) state law predominates in the matter; (2) Defendant has "unclean hands"; (3) Defendant did not comply with the procedural requirements of removal; and (4) the court lacks jurisdiction under the *Rooker-Feldman* doctrine. The Court addresses these arguments in turn.

### A. *Predominance of State Law and Unclean Hands*

Plaintiff's first two arguments fail for the same reason: even if the allegations they rest on were accepted as true, neither argument would compel remand. First, even if state law predominated here, "the existence of concurrent state and federal jurisdiction does not preclude removal of an action to a federal court . . . ." 14C C. Wright & A. Miller, Federal Practice and Procedure § 3721 (2019). And second, even if the doctrine of unclean hands applied here, "the doctrine of unclean hands does not strip a federal court of jurisdiction to hear a case that has been properly removed." *Craddock v. Beneficial Fin. I Inc.*, Civ. No. GEC-14-00093, 2014 WL 2090554, at *2 (W.D. Va. May 19, 2014). Accordingly, the Court declines to disrupt Defendant's statutory right to removal on either of these grounds.

### B. *Compliance with the Procedural Requirements of Removal*

Plaintiff's third argument—Defendant did not follow the proper removal procedures—implicates 28 U.S.C. § 1446, which provides the procedures for removal. This provision states that a defendant must file "a notice of removal . . . containing a short and plain statement of the grounds for removal" within 30 days of receiving service of the plaintiff's complaint. § 1446(a)–(b). The defendant should attach to the notice of removal "a copy of all process, pleadings, and orders served upon such defendant . . . ." § 1446(a). Plaintiff contends that Defendant failed to comply with these procedures because it did not remove the action within 30 days or timely file

4

all state-court papers. (Mot. Remand at 8; Mot. Strike at 1–2, ECF No. 23.) The latter alleged deficiency is the basis of Plaintiff's motion to strike.

Plaintiff misunderstands the rules regarding the timing for removal. The 30-day removal clock begins running on the day the defendant is served with the complaint, not, as Plaintiff contends, on the day the plaintiff files suit. *See* § 1446(b). Here, Plaintiff filed his suit on July 26, 2019, but he did not serve Defendant until August 1, 2019. (2019 Circuit Court Docket, Opp'n Mot. Remand Ex. A, ECF No. 19-1; Affidavit of Service, Opp'n Mot. Remand Ex. B, ECF No. 19-2.) Removal of the action on August 30, 2019 was within the 30-day window and was timely.

Plaintiff similarly misreads the scope and significance of the rules regarding the filing of state-court papers. When Defendant filed its notice of removal, it attached a copy of Plaintiff's complaint, the civil cover sheet, the Writ of Summons served upon Defendant, and a certificate of service stating that the notice of removal had been mailed to Plaintiff. (ECF Nos. 1, 1-1, 1-2, 1-3.) It did not attach—critically, according to Plaintiff—an affidavit from the service processor certifying that Defendant was served on August 1, 2019. (Mot. Strike Reply at 1–2, ECF No. 25.) Defendant only filed this affidavit of service after Plaintiff contested the timeliness of removal in his motion to remand. (Affidavit of Service at 1.)

The absence of the affidavit of service from the initial batch of removal papers does not compel remand. First, Plaintiff has not identified any authority providing that an affidavit of service qualifies as a "process, pleading[], and order[]" that must be attached to a notice of removal under § 1446(d). Even if the affidavit did qualify, "the failure to file all the state-court papers" at the time of removal is not a "jurisdictional defect" and is "curable in . . . federal court." 14C C. Wright & A. Miller, Federal Practice and Procedure § 3733 (2019); *see also Cardoza v. Med. Device Bus. Servs., Inc.*, 389 F. Supp. 3d 399, 406 (W.D. Va. 2019) (collecting cases where courts

concluded that a defendant's failure to attach state-court papers to a notice of removal was a *de minimis* violation and did not compel remand). Accordingly, the Court will deny Plaintiff's motion to strike Defendant's untimely filing of state-court papers and will decline to remand the action on the grounds that Defendant did not comply with the removal procedures.

### C. *The Rooker-Feldman Doctrine*

Plaintiff's fourth argument in support of remand—that the Court lacks jurisdiction under the *Rooker-Feldman* doctrine—also lacks merit. Under the *Rooker-Feldman* doctrine, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (per curiam). The idea behind the doctrine is that 28 U.S.C. § 1257 vests federal appellate jurisdiction over state-court judgments only in the Supreme Court, not federal district courts. *Id*. In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), the Supreme Court explained that the scope of the *Rooker-Feldman* doctrine is narrow: it only bars jurisdiction in federal district courts in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." 544 U.S. at 284. Where these precise circumstances are not met, the scope of the district court's review is governed by principles of preclusion, rather than *Rooker-Feldman*. *Id*. at 293.

Here, there was a final state-court judgment that addressed the terms and validity of the loan agreement between Plaintiff and Defendant.[2] But the precise circumstances described in *Exxon* are not present here: it is Defendant—the state-court winner—who seeks to adjudicate this second, related suit in federal court. And Defendant is not "inviting district court review and

---

[2] To the extent Plaintiff argues remand is appropriate because there is *currently* an action pending in state court, the Court is not persuaded. (Opp'n Mot. Dismiss at 4–5.) Plaintiff's 2015 suit concluded when the Court of Special Appeals affirmed the Circuit Court's summary judgment decision and Plaintiff has not identified any other pending suit.

rejection" of the state-court judgment, *Exxon*, 544 U.S. at 284; to the contrary, Defendant urges this Court to adopt the same position as the state court. (Mot. Dismiss at 9.) Under these circumstances, the Fourth Circuit has concluded that *Rooker-Feldman* does not limit the district court's jurisdiction.[3] *See Hulsey v. Cisa*, 947 F.3d 246, 251 (4th Cir. 2020).

In sum, the Court concludes that Defendant's removal of this action to federal court was proper. The requirements of § 1332 are met and none of Plaintiff's arguments as to why this action should be remanded are persuasive. Therefore, the Court will deny Plaintiff's motion to remand.

## III. Motion to Dismiss[4]

Having determined removal was proper, the Court turns to Defendant's motion to dismiss. Defendant has moved to dismiss each of Plaintiff's claims with prejudice.

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. An inference of the mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. Courts must accept the allegations of the complaint as true, "constru[ing] the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

---

[3] Theoretically, the rules of preclusion could limit the scope of the Court's review here. Preclusion, however, is an affirmative defense, Fed. R. Civ. P. 8(c), which means the burden is on the defendant to raise the issue. Defendant has not yet done so. Because it "generally is disfavored" for a district court to raise an affirmative defense such as preclusion *sua sponte*, the Court declines to do so at this stage. *See Saudi v. V. Ship Switzerland, S.A.*, 93 F. App'x 516, 520 (4th Cir. 2004).

[4] In considering Defendant's motion to dismiss, the Court will only consider the complaint and the documents submitted at the time of the filing of the motion to dismiss. The Court will not, in other words, consider anything that emerged during the period of unauthorized discovery that occurred after the filing of the motion to dismiss.

Where a plaintiff is proceeding *pro se*, the complaint should be "liberally construed" and should be held to a "less stringent" standard than a formal pleading drafted by a lawyer. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citation omitted).

### A. Breach of Contract (Count II) and Bad Faith Breach of Contract (Count III)

Plaintiff's Counts II and III are based on the same underlying allegations: during the 2016 mediation session, the parties reached a binding settlement agreement, which was memorialized in an unsigned, handwritten document. (Compl. at 3–4, 6–7.) Defendant then failed to honor the terms of this agreement. (*Id*. at 3–4.) Plaintiff contends this amounted to breach of contract (Count II) and bad faith breach of contract (Count III). (*Id*. at 6–7.) The allegations supporting the latter claim suggest that claim is better understood as alleging a violation of the covenant of good faith and fair dealing.

Plaintiff cannot state a claim for breach of contract under Count II. "A breach of contract action requires a contractual obligation in the first instance," *Davis v. Balt. Hebrew Congregation*, 985 F. Supp. 2d 701, 717 (D. Md. 2013), and Plaintiff has not plausibly alleged such an obligation exists here. Maryland's Statute of Frauds provides that for a contract involving "any interest in or concerning land" to be enforceable, it must be "in writing and signed by the party to be charged or some other person lawfully authorized by him." Md. Code Ann., Real Prop. § 5-104. The agreement allegedly reached during the mediation involves an "interest in or concerning land"—specifically the property at 1144 N. Stricker Street—so Maryland's Statue of Frauds applies. *See Calomiris v. Woods*, 727 A.2d 358, 368 (Md. 1999) (explaining that mortgage contracts fall within Maryland's Statute of Frauds). Because neither party signed the document, it is not enforceable. *See id.* This holds true even if, as Plaintiff alleges, Defendant orally represented at the mediation

that it would abide by the terms described in the document.[5] *Collings v. MGC Mortg., Inc.*, Civ. No. MAB-14-02973, 2016 WL 9724969, at *6 (D. Md. Jan. 28, 2016) (explaining that "an oral agreement or an oral modification to an existing mortgage contract is not enforceable" because it does not comply with Maryland's Statue of Frauds.)

Further compounding Plaintiff's problems, even if the unsigned, handwritten document was somehow binding at one point, it is no longer enforceable, as it was superseded by the 2018 loan modification. (2018 Loan Modification ¶ 4C.) The plain language of the 2018 loan modification stated that "this agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender/Mortgagee." (*Id.*) Where, as here, a subsequent agreement expressly supersedes an earlier one, a plaintiff waives his ability to enforce the earlier agreement. *See Letke v. Wells Fargo Home Mortg., Inc.*, Civ. No. RDB-12-3799, 2015 WL 6163517, at *5 (D. Md. Oct. 19, 2015), *aff'd sub nom. Letke v. Wells Fargo Home Mortg.*, 639 F. App'x 955 (4th Cir. 2016).

In sum, Plaintiff cannot state a claim for breach of contract under Count II and the Court will dismiss the claim. Because additional factual allegations cannot remedy the underlying problems with this claim—that the document was unsigned, and later expressly superseded—the Court will dismiss this claim with prejudice.

The Court will also dismiss Plaintiff's claim for breach of the covenant of good faith and fair dealing under Count III. "[T]here is no independent cause of action at law in Maryland for breach of the implied covenant of good faith and fair dealing." *Mount Vernon Properties, LLC v.*

---

[5] Plaintiff appears to cite a 2011 consent order, *In the matter of JPMorgan Chase, Bank, N.A. New York, NY*, AA-EC-11-15 (April 13, 2011), for the contention that oral modifications to a mortgage contract are enforceable. (Opp'n Mot. Dismiss at 2–3.) This consent order between Defendant and the Department of the Treasury does not support Plaintiff's position. The portion of the order referenced by Plaintiff required Defendant to submit a plan explaining how it planned to improve written and oral communications with borrowers. It did not address the enforceability of oral modifications to a mortgage contract.

*Branch Banking And Tr. Co.*, 907 A.2d 373, 381 (Md. Ct. Spec. App. 2006). "Instead, the duty of good faith and fair dealing is merely part of an action for breach of contract." *Cook v. Nationwide Ins. Co.*, 962 F. Supp. 2d 807, 820 (D. Md. 2013), *as amended* (Oct. 3, 2013) (citation omitted). Where a plaintiff attempts to state an independent cause of action for breach of this covenant, dismissal is appropriate. *See Mount Vernon Properties*, 907 A.2d 373 at 381. Because additional factual allegations cannot remedy this legal impediment to recovery under Count III, the Court will dismiss this claim with prejudice.

## B. Quiet Title (Count I)[6]

The purpose of an action to quiet title is "to protect the owner of legal title 'from being disturbed in his possession and from being harassed by suits in regard to his title by persons setting up unjust and illegal pretensions . . . .'" *Wathen v. Brown*, 429 A.2d 292, 294 (Md. Ct. Spec. App. 1981) (quoting *Textor v. Shipley*, 26 A. 1019 (Md. 1893)). An action to quiet title "cannot, as a general rule, be maintained without clear proof of both possession and legal title in the plaintiff." *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014) (quoting *Stewart v. May*, 73 A. 460, 463–64 (Md. 1909)). "[T]he plaintiff has the burden of establishing both possession and legal title by clear proof." *Porter v. Schaffer*, 728 A.2d 755, 766 (Md. Ct. Spec. App. 1999) (citation omitted).

Plaintiff cannot state a claim to quiet title because he does not, and cannot, plausibly allege he has legal title to the property. A loan secured by a deed of trust "transfers the estate of the debtor to the trustee, giving the trustee legal title to the property." *Fagnani v. Fisher*, 15 A.3d 282,

---

[6] The title of Count I is "Quiet Title – Statute of Limitations." (Compl. at 4.) Plaintiff does not explain how or why a statute of limitations is relevant here, nor does Plaintiff reference a statute of limitations anywhere in the complaint. A statute of limitations governs when a plaintiff can bring a civil action; it is not itself a type of claim a plaintiff can bring against a defendant. Md. Code Ann., Cts. & Jud. Proc. § 5-101. Accordingly, the Court will disregard this reference to a statute of limitations.

10

289 (Md. 2011). This conveyance can be "defeated on the performance of a condition subsequent[,]" such as paying off the loan. *Simard v. White*, 859 A.2d 168, 176 (Md. 2004) (citation omitted). The parties agree that in 2007, Plaintiff secured a loan with a deed of trust and he has not yet repaid the loan. Therefore, title remains with the trustee and Plaintiff cannot state a claim to quiet title. Indeed, this is precisely what the Circuit Court and the Court of Special Appeals concluded when Plaintiff brought claims to quiet title in his prior lawsuit. (Circuit Court 2016 Mem. Op. at 3; Court of Special Appeals 2017 Mem. Op. at 5–6.)

Plaintiff does not engage with this well-established precedent. He instead contends that he has legal title to the property—and therefore, can bring a claim to quiet title—because Defendant's refusal to honor the agreement reached during the mediation session renders the entire loan agreement unenforceable. (Compl. at 5–6.) Even if this legal theory was plausible, the Court has already concluded no binding agreement was reached during the mediation session.

Accordingly, the Court will dismiss Plaintiff's claim to quiet title. Because additional factual allegations cannot remedy the claim's underlying defect—Plaintiff does not have title to the property—the Court will dismiss this claim with prejudice. *See Anand*, 754 F.3d at 200 (affirming district court's dismissal with prejudice of plaintiffs' quiet title claim because plaintiffs could not plausibly allege they had legal title to a property secured by a deed of trust).

### C. Violations of FCRA (Count IV)

Plaintiff alleges only generally that Defendant violated FCRA; he does not cite a specific provision. FCRA imposes two duties on furnishers of credit information like Defendant. First, under 15 U.S.C. § 1681s-2(a), furnishers of credit information "have a general duty to provide accurate and complete information" to credit reporting agencies. *Saunders v. Branch Banking & Tr. Co. of Va.*, 526 F.3d 142, 149 (4th Cir. 2008). Second, under § 1681s-2(b), once a consumer

disputes the accuracy of a furnisher's report, the furnisher is obligated to conduct an investigation and report its findings to the credit reporting agency. *Johnson v. Capital One*, Civ. No. PWG-18-02102, 2019 WL 1936147, at *4 (D. Md. Apr. 30, 2019). A plaintiff can only bring a private cause of action for violating the second set of duties. *Saunders*, 526 F.3d at 149 ("FCRA explicitly bars private suits for violations of § 1681s–2(a), but consumers can still bring private suits for violations of § 1681s–2(b).")

Because there is no private cause of action under § 1681s–2(a), the Court assumes Plaintiff is alleging violations of § 1681s–2(b). To state a claim under this provision, "a plaintiff must establish three elements: (1) that he or she notified the consumer reporting agency of the disputed information, (2) that the consumer reporting agency notified the defendant furnisher of the dispute, and (3) that the furnisher then failed to investigate and modify the inaccurate information." *Ausar-El v. Barclay Bank Delaware*, Civ. No. PJM-12-0082, 2012 WL 3137151, at *3 (D. Md. July 31, 2012).

Plaintiff does not allege these conditions precedent. Defendant identified this problem in its motion to dismiss (Mot. Dismiss at 10–11), but Plaintiff did not substantively respond in his opposition, stating only: "The Defendant claims the Plaintiff did not report the false information reported to the credit reporting agencies. The actual facts are, that the Defendant did not report the modification to the agencies." (Opp'n Mot. Dismiss at 10.) This response does not remedy this pleading deficiency. Therefore, the Court will dismiss Plaintiff's claim.[7] *See Green v. Sw.*

---

[7] At the end of Plaintiff's discussion of his FCRA claim in his opposition to Defendant's motion to dismiss, Plaintiff appeared to claim that Defendant violated several other statutes: the Maryland Consumer Debt Collection Act, the Fair Debt Collection Practices Act, and the Maryland Consumer Protection Act. (Opp'n Mot. Dismiss at 13.) This is the first time Plaintiff has mentioned these laws in this suit. Because Plaintiff did not raise these claims in the pleadings—nor did Plaintiff explain his theory as to why these laws were violated—the Court will not consider Plaintiff's contentions with respect to these laws. *See* Fed. R. Civ. P. 8.

*Credit Sys.*, L.P., 220 F. Supp. 3d 623, 625 (D. Md. 2016) (dismissing plaintiff's claim under § 1681s–2(b) for failing to allege the conditions precedent).

The Court will dismiss Plaintiff's FCRA claim with prejudice to the extent the "false information" allegedly reported to the credit reporting agencies involves the terms described in the unsigned, handwritten document, as the Court has already concluded that document is not binding. To the extent Plaintiff alleges Defendant submitted other, unrelated false information to credit reporting agencies, the Court will dismiss this claim without prejudice.

## IV. *Discovery and Summary Judgment Motions*

Although discovery has not yet commenced in this case, numerous discovery-related motions are pending. The facts underlying these motions are as follows: on January 21, 2020, Plaintiff served discovery requests upon the Defendant seeking admissions and the production of documents; Plaintiff also filed these requests as motions. (ECF Nos. 26, 27.) Ten days later, on January 31, 2020, Defendant responded by filing a motion to stay discovery pending the resolution of its motion to dismiss and informed Plaintiff that it would not respond to any discovery requests "absent further order from the Court." (ECF No. 29; M.S.J. Ex. B at 52, ECF No. 32-1.) Just over a month later, on March 9, 2020, Plaintiff moved for summary judgment on the grounds that Defendant had not responded to his discovery requests. (M.S.J., ECF No. 31.) Plaintiff simultaneously filed an additional motion for the production of documents (ECF No. 33) as well as a motion to compel discovery (ECF No. 32).

As an initial matter, Plaintiff's discovery requests in both January and March were premature. Under Local Rule 104.4, "discovery shall not commence and disclosures need not be made until a scheduling order is entered." No scheduling order has been entered in this case. Because Plaintiff's requests for discovery (ECF Nos. 26, 27, 33) were untimely, the Court will

deny them.[8]  The Court will deny Plaintiff's motion to compel (ECF No. 32) for a similar reason: a motion to compel is about "enforcing discovery obligations" and because discovery has not yet commenced, Defendant has not violated its discovery obligations.  *See* 8B C. Wright & A. Miller, Federal Practice and Procedure § 2285 (2019).[9]

The only remaining motion is Plaintiff's motion for summary judgment.  In the motion, Plaintiff contends that because Defendant did not respond to his (untimely) request for admissions within 30 days of receiving the request, those admissions should be deemed admitted under Rule 36 and judgment should be entered in his favor.  The Court declines to give such sweeping effect to a clearly improper discovery request.  *See Butler v. PP & G, Inc.*, Civ. No. WMN-13-43, 2013 WL 4026983, at *3 (D. Md. Aug. 6, 2013) (quoting *Perez v. Miami–Dade Cnty.*, 297 F.3d 1255, 1268 (11th Cir. 2002)) (explaining that a court should not permit Rule 36 to be used as a "weapon" to "harass the other side or . . . with the wild-eyed hope that the other side will fail to answer and therefore admit essential elements . . . .").

Even if the admissions were somehow admitted as a result of confusion related to Plaintiff's numerous, untimely discovery requests, the Court would still deny Plaintiff's motion for summary judgment.  The Court has already concluded that Plaintiff has not stated a claim upon which relief can be granted; it would be contrary to the Fourth Circuit's "strong policy that cases be decided on their merits" to now grant Plaintiff summary judgment.  *See United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993).  Indeed, where, as here, the merits clearly bar a plaintiff from recovering, courts do not allow a defendant's non-response to a request for

---

[8]  Plaintiff's discovery motions were also procedurally improper: discovery requests should be served upon parties, and not filed with the Court.

[9]  Plaintiff's motion to compel faces the additional problem that it is not clear he has met the meet and confer requirements of Rule 37 and Local Rule 104.7.  Defendant contends a meet and confer has not occurred (Mot. Stay ¶ 4); Plaintiff at one point contends one has occurred (M.S.J. at 2), and at another point that he "attempted to meet and confer, but the Defendant refused . . ." (Mot. Compel at 10).  This ambiguity is not sufficient to meet the requirements of Rule 37 and Local Rule 104.7.

admission to serve as grounds for granting the plaintiff summary judgment. *See CDS Family Tr. v. Martin*, Civ. No. JMC-15-02584, 2019 WL 2477358, at *2 (D. Md. June 13, 2019), *reconsideration denied*, Civ. No. JMC-15-02584, 2019 WL 3306011 (D. Md. July 23, 2019) (denying plaintiff summary judgment where defendant did not timely respond to a request for admissions because plaintiff was not entitled to recover on the merits); *Nat'l Indep. Truckers Ins. Co. v. Gadway*, 860 F. Supp. 2d 946, 956 (D. Neb. 2012) (reaching the same conclusion).

In sum, the Court will deny Plaintiff's discovery requests and motion to compel as untimely; it will deny Defendant's motion to stay as moot; and it will deny Plaintiff's motion for summary judgment. It will deny these motions without prejudice.

## V.     *Leave to Amend*

Plaintiff has requested leave to amend his complaint to add additional allegations to support his claims as well as to add two new claims. Plaintiff's request, however, is not procedurally proper. Rule 7(b) provides that the proper procedure for seeking leave to amend is to file a motion. Fed. R. Civ. P. 7(b). A copy of the amended complaint should be submitted with the motion. 6 C. Wright & A. Miller, Federal Practice & Procedure § 1485 (2019). Plaintiff did not file a motion or submit a proposed amended complaint; he merely expressed his wish to amend in his opposition brief. The Court will deny his request as procedurally improper. *See Saunders v. Keenan*, Civ. No. JKB-15-1265, 2015 WL 4622492, at *1 (D. Md. July 31, 2015).

The Court notes, however, that even if Plaintiff had followed the proper procedures, amendment here would likely be futile. The Court has already dismissed the bulk of Plaintiff's claims with prejudice and the two new claims Plaintiff seeks to bring—(1) fraud and (2) violations of the Federal Tract Commission Act ("FTC Act")—have serious deficiencies. The allegations in support of the fraud claim do not meet Rule 9(b)'s particularity requirements, and the provisions

of the FTC Act cited by Plaintiff do not provide for private causes of action. *See Michaud v. J.P. Morgan Chase Bank, N.A.*, Civ. No. WDQ-12-0815, 2012 WL 1454859, at *2 (D. Md. Apr. 25, 2012) (collecting cases where courts have held that private parties did not have standing to sue under the FTC Act).

## *VI.  Conclusion*

For the reasons set forth above, the Court will deny Plaintiff's motion to remand, deny Plaintiff's motion to strike, grant Defendant's motion to dismiss, deny Plaintiff's discovery requests, deny Defendant's motion to stay as moot, and deny Plaintiff's motion for summary judgment.

DATED this 25th day of March, 2020.

BY THE COURT:

/s/
James K. Bredar
Chief Judge